UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| R.I. SPIECE SALES COMPANY, INC. ) <br> and THOMAS G. SPIECE, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BANK ONE, NA, ) <br> ) <br> Defendant. ) | CASE NO. 1:03-CV-175-TS |

**MEMORANDUM OF DECISION AND ORDER**

On July 7, 2005, this Court issued a Memorandum of Decision and Order granting in part and denying in part the Defendant's Motion for Summary Judgment. The Defendant, Bank One, has filed a Motion for Partial Reconsideration of that order [DE 67] arguing that it is entitled to summary judgment on Plaintiff Spiece Sales Company's remaining claims.

The Defendant raises two issues for reconsideration: First, the Defendant insists that under the Seventh Circuit decision in *Zenith Electronics Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416 (7th Cir. 2005), published after briefing on summary judgment was completed, Spiece Sales does not have an adequate means of proving lost profits due to their failure to designate a qualified expert for this purpose; and, second, the Defendant argues that, under Indiana Code § 26-1-9.1-513, it had twenty days to remove inadvertent UCC filings.

Spiece Sales, on the other hand, argues that it can present testimony about its actual and future losses through Mr. Spiece's lay testimony because Mr. Spiece, as an owner of the business, may testify about its value, including lost profits. Spiece Sales does not address the Defendant's second argument in any considerable detail.

A.     Lost Profits and Federal Rule of Evidence 701

*WH-TV* does not mandate that the Court change its earlier decision, as *WH-TV* is distinguishable from the case at hand. In *WH-TV*, the defendant filed a counterclaim against a plaintiff who sought to collect unpaid bills for cable boxes it produced. The defendant claimed that it lost profits because of defects in the plaintiff's merchandise. The defendant intended to use the cable boxes in a new and unique market of San Juan. This plan fell through, however, when the cable boxes failed to perform as promised. At trial the defendant presented a testimony from an expert who merely "eyeballed" his projections about the defendant's losses. As the Seventh Circuit noted, the expert "all but conceded that he had not applied 'reliable principles and methods.'" *Id.* at 418. Rather, he relied on intuition, which the Court refused to allow. *Id.* The Court stressed that an expert's estimates must be testable and must be founded in sound methodology, and reiterated the well-settled law that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id.* at 419 (citing cases). The Court finished its analysis by stating that what is true about an expert's approach "goes double for [the defendant's] internal projections, which rest on its say-so rather than a statistical analysis." *Id.* at 420.

*WH-TV* did not change the law in the Circuit that those who have special knowledge of the business and its operations may also testify as to the facts of the business that underlie profit expectations under Federal Rule of Evidence 701 without qualifying as experts. *Id*. at 420 (citing *Lightening Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)). Of course, these witnesses may not make inferences from the data but must testify only as to the facts known to them.

Mr. Spiece promises to be such a witness, and his proffered testimony sets tangible

2

parameters of the Spiece Sales value and alleged losses. Mr. Spiece is not going to testify about a theoretical or a unique market, such as in *WH-TV*. Rather, he intends to present evidence about the facts known to him from his day-to-day management of Spiece Sales. Although some of his deposition testimony as to the value of the company was confusing, it states the basic framework of how he arrived to his numbers. Mr. Spiece is not merely speculating or guessing about the losses but has a basis for his assertions. His calculations of lost profits and projections of future lost profits are based on Spiece Sales' actual past performance. If the Defendant is convinced otherwise, it will be able to challenge Mr. Spiece's claims during cross-examination and with its own witnesses.

**B.    The Twenty-Day Statutory Period for Removing the Second Liens**

The Defendant challenges the Court's ruling that the Plaintiff may proceed against the Defendant for the harms suffered by the Plaintiff as a result of the illicit continuation statements filed on August 6, 2004, and removed on October 8, 2004. Specifically, the Defendant challenges the Court's determination that the twenty-day period for removing satisfied liens after the request of the debtor, as provided by Indiana Code § 26-1-9.1-513, is inapplicable when the liens at issue never had a basis in law. It is noteworthy, though, that the Defendant is taking a different approach to Indiana Code § 26-1-9.1-513 than it did in its motion for summary judgment.

The Defendant previously argued that "the duty to terminate 'financing statements' found in Section 9-513(c) applies to legally valid statements rather than *inadvertent*, ineffective continuation statements." (Df.'s Memo. Sum. J. 19) (emphasis added). Now, the Defendant argues that Section 9-513(c) also applies to inadvertent filings:

> The Official Comments makes clear that Ind. Code § 26-1-9.1-513 applies to (i) financing statements that become ineffective upon the payoff of an underlying debt

3

>and (ii) inadvertent filings. Official Comment 3, which is labeled 'Bogus Filings,' describes the steps required to correct an 'unauthorized filing statement.' Specifically, it states how the debtor can comply with the 'authenticated demand' requirement, and thereby start the clock on the 20-day rule, when it has no contractual relationship with the secured party of record.

(Df.'s Memo. Part. Reconsid. 9.)

Unauthorized liens over the property or collateral of another are a serious matter. "Bogus" liens have been utilized by domestic terrorist groups, convicted criminals, disgruntled employees, and political activists to harass public figures and disrupt the business of their adversaries. *See* Juliet M. Moringiello, *Revised Article 9, Liens From the Fringe, and Why Sometimes Signatures Don't Matter*, 10 Widener J. Pub. L. 135, 139 (2001). "Unauthorized or bogus financing statements may seem harmless since they do not create an interest in anyone's property; however, because lenders search the U.C.C. records before making loans to potential debtors, the existence of these financing statements might delay the aggrieved party in obtaining a loan, such as a mortgage or car loan." *Id*. at 139–40; *see also* Terry M. Anderson, et al., *Attachment and Perfection of Security Interests Under Revised Article 9: A "Nuts and Bolts" Primer*, 9 Am. Bankr. Inst. L. Rev. 179 (2001). Here, the Plaintiff claims that the Defendant's unauthorized financing statements had precisely this effect: other banks were scared off by the illicit liens on the Plaintiff's inventory.

However, a review of the UCC's history confirms that the Defendant's second interpretation is correct, and it requires the Court vacate its earlier ruling concerning Spiece Sales' tort claim. The procedure for removing illicit liens and the remedy for those who suffer from them have developed with time. Former Article 9, which was replaced by Indiana statute in 2001, contained no statutory remedy at all for illicit liens filed by stubborn or uncooperative parties. "If the filing office accepted the financing statement, it remained on the record until the expiration of

4

five years or the filing of a termination statement." Moringiello at 142. If no termination statement was agreed to, the rightful owner was either stuck with a black mark in its UCC record or "was required to bring an action in court to remove the financing statement from the public record." *Id*.

Revised Article 9 introduced the availability of a type of "self help" for the rightful owner. Under these revisions to the UCC, the debtor may file a "correction statement with respect to any financing statement filed under that person's name 'if the person believes that the record is inaccurate or was wrongfully filed.'" Anderson at 206 (quoting UCC § 9-518). However, these correction statements are "incomplete relief," as the illicit lien remains on the UCC records. *Id*. The correction statement simply serves as notice to potential lenders that the debtor disputes this claim of interest.

Additionally, though, Revised Article 9 introduced a means for the debtor to completely remove bogus liens: if the debtor requests that the party of record file termination statements for the liens and the claimant fails to do so after twenty days, "section 9-509(d)(2) will allow the debtor to file a termination statement without the secured party's consent." *Id*. This remedy is particularly helpful when the liens have been filed by surreptitious, malevolent parties. But the authors of the UCC did not provide a penalty for filers of bogus liens so long as they were removed within twenty days of receiving a notice. Instead, the burden is on the security holder to request immediate removal of the lien:

> . . . within twenty (20) days after a secured party receives an authenticated demand from a debtor, the secured party shall cause the secured party of record for a financing statement to send to the debtor a termination statement for the financing statement or file the termination statement in the filing office if:
> . . .
> (4) the debtor did not authorize the filing of the initial financing statement.

Ind. Code 26-1-9.1-513(c). The security holder may recover damages only if the secured party fails

to cause the secured party of record to file or send a termination statement as required by § 513(c). *See id.* § 625(e)(4).

Therefore, even though the Defendant's second lien on Spiece Sales' property was unauthorized, the Defendant had twenty days from receiving the notice to remove the lien from the record. Having done so, it is not liable to Spiece Sales in tort.

## CONCLUSION

For the reasons stated above, the Court GRANTS in PART and DENIES in PART the Defendant's Motion for Partial Reconsideration of the Court's July 7 Order [DE 67].

SO ORDERED on November 9, 2005.

      /s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT