UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| R.I. SPIECE SALES COMPANY, INC. and THOMAS G. SPIECE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CAUSE NO. 1:03-CV-175-TS<br>) |
| BANK ONE, NA, | )<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

When R.I. Spiece Sales Company, Inc., first brought suit against Bank One, NA, damages were only an element of its claim that Bank One was to blame for the closure of two of its retail stores when it wrongfully left liens on Spiece Sales' inventory. Now, damages are the sole issue before this Court on Bank One's second Motion for Summary Judgment [DE 81], filed on January 23, 2006.

Bank One asserts that Tom Spiece, the owner of Spiece Sales, has changed the basis for computation of lost profits from actual, historical data to hypothetical adjustments and complex projections from a different business model and that the later computation is untimely, legally insufficient, and inadmissible. The Defendant argues that without an admissible damage calculation, the Plaintiff's breach of contract claim fails as a matter of law. Spiece Sales maintains that Mr. Spiece has consistently applied the same analysis and consistently arrived at the same result in determining the Company's lost profits. This analysis, they assert, is based on Spiece Sales's past performance history, drawn from Mr. Spiece's first-hand knowledge of and experience in the day-to-day operations of his business.

Bank One also contends that summary judgment is appropriate on the breach of contract

claim because damages were not foreseeable for breach of the bankruptcy reorganization plan and the Plaintiff failed to take advantage of reasonable opportunities to mitigate damages. The Plaintiff disagrees with Bank One's characterization of the evidence and submits that it is for a jury to determine the remaining issues in this case.

## PREVIOUS RULINGS

On July 7, 2005, the Court issued an Opinion and Order granting summary judgment for Bank One on all of the Plaintiff's claims except two: breach of contract and negligence. The Defendant raised the speculative nature of damages as one of the reasons it was entitled to summary judgment. Specifically, the Defendant argued that Spiece Sales failed to designate an expert to estimate damages and had no reliable basis for estimating its lost profits. The Court disagreed and ruled that the issue of damages could proceed to a jury:

> Mr. Spiece would testify in this case as a lay witness with particularized knowledge of his business and affairs surrounding this situation. An owner of property is allowed to testify as to the value of his property, provided he has a clear basis for the methods and figures used in that calculation. *Court View Centre v. Witt*, 753 N.E.2d 75, 82 (Ind. Ct. App. 2001). Mr. Spiece argues that the Mishawaka and Fort Wayne stores, had they not closed because of the Defendant's breach of contract and negligence, "would have generated a combined net profit based on a historic profit rate of 5%, of $395,000." (Pl.'s Resp. Br. at 16.) Mr. Spiece furthermore states that the value of his business decreased by $1.975 million, calculated by multiplying the above lost profits of $395,000 by the "standard" multiplier of "five times the earnings." *Id*. (citing Spiece Aff. ¶ 20). Though the basis and reliability for Mr. Spiece's calculations are not clearly established in this Record, neither are the figures mere speculation or conjecture. The Defendant does not present caselaw or legal standards for why this evidence is legally insufficient in itself, and instead relies on contrary evidence that the business was in fact losing money. From the figures presented and developed at trial, where Mr. Spiece's calculations are subject to cross-examination, a jury can determine whether Spiece Sales suffered recoverable damages. Examining the evidence in the light most favorable to the Plaintiffs, summary judgment on the issue of damages is premature.
> The Defendant also argues that Spiece Sales ought to be evaluated as a "new

> venture," as their increased Internet sales, bankruptcy, and store closings have arguably changed the essence of the business. While the Defendant directs the Court to jurisdictions that have adopted the "new business rule," Indiana is not among them. *Cf. MindGames, Inc. v. W. Pub. Co.*, 218 F.3d 652, 656 (7th Cir. 2000) (finding that "[t]he 'new business' rule has, moreover, been abandoned in most states that once followed it" and "newness" should be just one factor in the determinative inquiry of undue speculation in estimating damages). Additionally, even when evaluating a new business, "some degree of speculation is permissible in computing damages, because reasonable doubts as to remedy ought to be resolved against the wrongdoer." *Id.* at 658 (quoting *Jones Motor Co. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190, 1194 (7th Cir. 1999)). The Defendant's assertion that the changes in Spiece Sales' operations make it a "new venture" for which recovery for lost profits is barred as a matter of law is not backed by Indiana law.

(7/7/05 Order at 17–18.)

On Bank One's motion for reconsideration of this ruling, the Court dismissed the negligence claim for reasons unrelated to the issue of damages. In addition, Bank One again challenged the Plaintiff's ability to provide damages, arguing that summary judgment was appropriate on the breach of contract claim because Spiece Sales did not have an adequate means of proving lost profits due to their failure to designate a qualified expert for this purpose. Bank One asserted that *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2005), which was published after briefing on summary judgment was completed, supported dismissal for failure to designate an expert to prove lost profits. Again, the Court disagreed that summary judgment was appropriate:

> *WH-TV* did not change the law in the Circuit that those who have special knowledge of the business and its operations may also testify as to the facts of the business that underlie profit expectations under Federal Rule of Evidence 701 without qualifying as experts. *Id.* at 420 (citing *Lightening Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)). Of course, these witnesses may not make inferences from the data but must testify only as to the facts known to them.
>     Mr. Spiece promises to be such a witness, and his proffered testimony sets tangible parameters of the Spiece Sales value and alleged losses. Mr. Spiece is not going to testify about a theoretical or a unique market, such as in *WH-TV*. Rather, he intends to present evidence about the facts known to him from his day-to-day management of Spiece Sales. Although some of his deposition testimony as to the value of the company was confusing, it states the basic framework of how he arrived

>to his numbers. Mr. Spiece is not merely speculating or guessing about the losses but has a basis for his assertions. His calculations of lost profits and projections of future lost profits are based on Spiece Sales' actual past performance. If the Defendant is convinced otherwise, it will be able to challenge Mr. Spiece's claims during cross-examination and with its own witnesses.

(11/9/05 Order at 2–3.)

After issuing this ruling, the Court permitted Bank One to re-open discovery to examine the Plaintiff's damage opinion. After conducting written discovery and completing a second deposition of Mr. Spiece on October 27, 2005, in which it inquired about the basis of his damage calculation, Bank One moved to continue the trial date to allow the Court to consider a second motion for summary judgment. Bank One argued that Mr. Spiece gave a new explanation for damages, which was not tied to actual past performance and did not meet the standard set forth by the Court in its November 9 Order. On December 20, the Court granted the Defendant's motion, vacated the trial date, and set a briefing schedule.

On January 23, 2006, Bank One moved for summary judgment on the remaining breach of contract claim. Spiece Sales responded on February 24 and Bank One replied on March 10.

**DISCUSSION**

Bank One contends that an essential element of the Plaintiff's breach of contract claim, damages, cannot be proven through the testimony of Mr. Spiece. Bank One also argues that Mr. Spiece provided false testimony regarding mitigation of damages.

Spiece Sales argues that it has consistently calculated its damages on the basis of a lost profit margin of 5% of sales from the Fort Wayne and Mishawaka stores that were forced to close by the Defendant's actions. The Defendant agrees that margin and total damage amounts have remained

4

the same, but contends that the "manner" of calculating the past profit margin of 5%, and the corresponding damages of $6,150,000, is different in three important respects. (Mem. at 15.) First, Bank One contends that the starting point, past profits, is based on hypothetical rather than actual results. Second, the Defendant asserts that the new starting point is not an "average" of several, hypothetically adjusted years, but a selection of best case years from a fourteen year period. Third, the Defendant contends that the future projection is much more complicated and represents only an unsubstantiated hope.

### A.     Mr. Spiece's Damage Calculation

Mr. Spiece submitted his affidavit in response to summary judgment. In that affidavit, he stated that the company lost profits of $2,100,000 for years 2001, 2002, 2003, and 2004. He arrived at this figure by using sales compilations for 2001 through 2004 and a 5% profit margin. (He also stated in answers to interrogatories that lost profits would equal about 5% of sales.) He estimated that his company would lose profits of about $600,000 per year in the future as a result of his inability to finance inventory to supply his company's retail stores.

During his first deposition, Mr. Spiece was asked his basis for estimating that lost profits would be about 5% of sales. He responded,"I used just a general number over those stores being in existence, one, for 20 some years, the other for eight or ten years, what their average profits were over a period of time. Sometimes it's higher, sometimes it's lower. I just took an average." (Spiece Dep. at 55.)

In his second deposition, Mr. Spiece used 5% net profit, or about $1 million, as the level of profitability he wanted to get his now existing business to achieve. This was the same level that he

5

testified that he enjoyed when his business included the Fort Wayne and Mishawaka stores. He believes that it would take him ten years, to the year 2010, to get his business back to this level of profitability. He projected future sales on the basis of past growth and explained that his profit margin would start out lower than 5%, but would eventually be much higher because his operation costs would remain fixed. He would reach the $1 million profit goal when he achieved $20 million in sales (5% x $20 million = $1 million). He based his sales projections on past experience growing a business with new retail stores.

      The Defendant questioned Mr. Spiece on both the 5% and the $1 million figures. Mr. Spiece acknowledged that he never had a year that showed $1 million in profit, but that was because he paid large rent payments, and without these payments, several years would have shown his profit as being more than $1 million. (Dep. at 25–26.) For example, although his net income for 1997 was reported as $791,000, this figure did not account for his income and excessive rents paid to himself that would have to be added back in. (Dep. at 33–34, 37–38.) He testified that he did not add back interest that was paid to him on money he loaned the company, because the did not consider it to be a true expense of the company. (Dep. at 38.) Thus, he believed that $1 million represented his true profit in 1997.

      The Plaintiff stated that he used 1997 as a representative year, rather than an average of several years, to determine profitability because it reflected the company's true profitability. He testified that he tried to pick a period that was an accurate reflection of his profitability and that the numbers would support an average net profit of over $1 million. He explained that in the years he opened new stores, (both before and after 1997) his profit was down, but as soon as he stopped opening new stores, his net profit margin soared well beyond 5%. (Dep. at 40–41.)

Bank One also questioned Mr. Spiece's use of a 5% profit rate in its second set of interrogatories:

> Paragraph 20 of the Affidavit refers to an "historic profit rate" of "five percent.' Describe in detail your method of computing this "historic profit rate," specifically, the exact data and mathematical computation you used to reach this result. In addition, identify all documents which evidence, refer or relate to any part of your response to this interrogatory and identify each person providing you information that refers or relates to your answer to this interrogatory, and specify the information so provided.

(Inter. No. 6.) The Plaintiff responded:

> Plaintiff used a methodology that incorporates expenses and sales based on all aspects of its financial holdings. There are large depreciation ad build out costs of new stores that decrease profit percentages. There are large rent factors that enable properties to be paid off at the expense of R.I. Spiece Sales' bottom line. That fact is, using this system of slow expansion and careful margin management, Plaintiff was able to grow a business from $1 million in sales and $300,000 in inventory to one that he $7 million worth of paid inventory and several wholly owned retail properties.

(Answer Inter. No. 6.) He provided this same explanation in his deposition when asked why a 5% historic profit rate was more appropriate than the lower margin of 2.25% that was contained in a Report prepared by Bank One's Dean Weinhert. He also added, regarding the 5% margin that "[h]ad it followed a more common strategy of amortizing capital expenses over longer periods, its profit margins would be higher. Blending these two approaches results in a 5 percent historic figure." (Answer Interr. No. 29.)

The Defendant also challenged Mr. Spiece's sales projections because his historical figures represented sales at the Coliseum Boulevard store and his new store was in a different location, inside a fieldhouse. Mr. Spiced testified that the fieldhouse store was capable of doing more business because it was bigger and had additional targeted customers—people attending basketball tournaments and people with fitness club memberships. He testified that it was his experience that

sales in his Wabash store would increase 50% to 75% when a basketball tournament was being held in Wabash.

**B.      Lost Profits and Forseeability of Damages**

A party injured by a breach of contract may receive consequential damages. *Clark's Pork Farms v. Sand Livestock Sys.*, 563 N.E.2d 1292, 1298 (Ind. Ct. App. 1990). Consequential damages include those that may reasonably be considered to have arisen naturally from the breach or those that may reasonably have been in contemplation of the parties as a probable result of breach of the contract at the time it was entered. *Id.* Consequential damages may include lost profits, providing the evidence is sufficient to allow the trier of fact to estimate the amount with a reasonable degree of certainty and exactness. *Id.* A jury may not award damages on the mere basis of conjecture and speculation. *Farm Bureau Mut. Ins. Co. v. Dercach*, 450 N.E.2d 537, 540 (Ind. Ct. App. 1983). However, lost profits need not be proved with mathematical certainty. *Id*. at 541.

Lost profits are not uncertain where there is testimony which, while not sufficient to put the amount beyond doubt, is sufficient to enable the jury to make a fair and reasonable finding as to the proper damages. *Uebelhack Equip., Inc. v. Garrett Bros., Inc.*, 408 N.E.2d 136, 140 (Ind. Ct. App. 1980); *Jerry Alderman Ford Sales, Inc. v. Bailey*, 291 N.E.2d 92, 106 (Ind. Ct. App. 1972). "Opinion testimony of the owner of a business and other persons familiar with his operation as to the amount of damages he suffered by way of lost profits" may be used as the basis for an award of consequential damages. *Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 22 (7th Cir. 1979). In addition, any doubts and uncertainties as to proof of the exact measure of damages must be resolved against the defendant. *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 659

(Ind. Ct. App. 2004). It is not proper, however, for the trier or fact to project past profits indefinitely into the future without evidence that the projection was at least reasonably certain. *Jerry Alderman*, 291 N.E.2d at 92.

The Defendant takes issue with the specific year that Mr. Spiece used to calculate his historic profit, both as a margin of sales (5%) and as a total dollar amount ($1 million). The Defendant contends that Mr. Spiece just chose a good year and did not do any calculations to arrive at an accurate average. It argues that his new method of computation is not based on actual past performance. The Court disagrees. Mr. Spiece clearly articulated his reason for choosing a particular year and testified that, in essence, he believed it did represent an average, or a representative figure, and that the numbers would bear that out. Mr. Spiece will be required to convince a jury that 1997 is the most accurate representation of his actual profit. The fact that he may not be able to do so does not mean that his testimony is foreclosed altogether as too speculative to support lost profit damages. Likewise, whether the claimed 5% profit is too high given the historical data and the adjustments made by Mr. Spiece is a matter that can be explored on cross-examination. The Defendant characterizes Mr. Spiece's adjustments to the reported profits as "hypothetical," whereas Mr. Spiece believes he can justify the adjustment for his compensation and rents as necessary to derive at a more accurate and representative profit number. The Defendant's arguments are not enough to keep Mr. Spiece from testifying.

Mr. Spiece can provide the jury with the facts known to him from his day-to-day management of Spiece Sales. *King v. Hartford Packing Co.*, 189 F. Supp. 2d 917, 924 (N.D. Ind. 2002) (noting that "[m]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an

9

accountant, appraiser, or similar expert"). A jury can consider the level of profitability the Plaintiff was enjoying, taking into account the factors that affected that profit and determine whether this was a reasonable and measurable loss suffered as a result of the Defendant's purported breach. Whether this testimony will be sufficient to allow a trier of fact to estimate the actual amount of profits lost with a reasonable degree of certainty and exactness remains to be seen. If the jury believes that Mr. Spiece's numbers are too speculative, it will have the opportunity to ignore or adjust them as it sees appropriate and as supported by the record.

At trial, Mr. Spiece's testimony will be held against the Rule 701 standard for lay witnesses giving opinions. Lay witness opinion testimony must not only be based on the personal perception of the witness, it also must be "rationally" based on that perception. Thus, speculation or testimony based on improper inferences is inadmissible. *Ackles v. Hartford Underwriters Ins. Corp.*, 699 N.E.2d 740, 743 (Ind. Ct. App. 1998). Because the Court cannot say, as a matter of law, that Mr. Spiece's has simply speculated as to the amount of loss that resulted from the closure of two stores, summary judgment is not appropriate. Mr. Spiece has articulated a reasonable basis for believing that his business would have continued to enjoy a certain level of success had it not been for the Defendant's breach. At trial, the Defendant can expose the flaws that it believes exists in Mr. Spiece's reasoning.

The Court also finds that it is for a jury to determine if it was foreseeable that the Defendant's failure to release liens on the inventory of a company would affect the Plaintiff's ability to secure a line of credit for his existing business and lead to financial problems, including store closures. The Court does not agree with the Defendant's statement that summary judgment is appropriate if the closure of two stores was not reasonably contemplated at the time the contract took

effect and the prevention of such a loss was not a "central" focus of the contract. *See Rogier v. Am. Testing and Eng'g Corp.,* 734 N.E.2d 606, 614 (Ind. Ct. App. 2000) (stating that the "measure of damages for breach of contract is *either* such damages as may fairly and reasonably be considered as arising naturally, i.e., according to the usual course of things from the breach of contract itself, *or* as may be reasonably supposed to have been within the contemplation of the parties at the time they entered into the contract as a probable result of the breach") (citing *Ind. & Mich. Elec Co. v. Terre Haute Indus. Inc.,* 507 N.E.2d 588, 601 (Ind. Ct. App. 1987)) (emphasis added).

### C.     Mitigation

The parties dispute the meaning and significance of Mr. Spiece's testimony regarding mitigation, especially as it relates to a loan secured in his father's name. These issues are not for the Court to resolve on summary judgment; it is not the Court's duty to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Moreover, the Indiana Supreme Court has made it clear that failure to mitigate damages is not an affirmative defense to liability, but is an affirmative defense that may reduce the amount of damages a plaintiff is entitled to recover after liability has been found. *Kocher v. Getz*, 824 N.E.2d 671, 674 (Ind. 2005); *see also Willis v. Westerfield*, 839 N.E.2d 1179, 1187 (Ind. 2006) (citing *Kocher*). The defendant bears the burden to prove that the plaintiff has not used reasonable diligence to mitigate damages. *Willis*, 839 N.E.2d at 1187.

### CONCLUSION AND ORDER

For the forgoing reasons, the Defendant's Motion for Summary Judgment [DE 81] is DENIED. The telephonic scheduling conference set for Thursday, April 20, 2006, at 11:00 a.m. is confirmed.

SO ORDERED on April 12, 2006.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT